IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE AUSTIN and JEAN
BURKE,

    Plaintiffs,

v.

IKEA U.S. EAST, LLC,

    Defendant.

CIVIL ACTION NO.

1:16-CV-03728-TWT-CMS

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Summary Judgment filed by Defendant IKEA U.S. East, LLC ("IKEA") on January 29, 2018.  [Doc. 33]. The first Plaintiff, Stephanie Austin ("Austin"), alleges that IKEA, her former employer, terminated her employment in retaliation for her making a complaint of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  The second Plaintiff, Jean Burke ("Burke"), alleges that IKEA terminated his employment in retaliation for his participation in an internal investigation regarding Plaintiff Austin's sexual harassment complaint, in violation of Title VII.  For the reasons discussed below, I recommend that IKEA's motion for summary judgment be granted.

# I.    FACTS[1]

On August 23, 2012, Burke was hired as a Team Lead in the Food Services Department of IKEA's Atlanta store.  [Videotaped Deposition of Jean Burke ("Burke Dep.") 29-30, 32, 49; Deposition of James F. Anastos ("Anastos Dep.") 13; Declaration of James F. Anastos[2] ("Anastos Decl.") ¶ 2].  In October 2012, Austin was hired as a Team Lead in the same department.  [Videotaped Deposition of Stephanie Austin ("Austin Dep.") 33-34, 56, 95-96; Burke Dep. 50; Anastos Decl. ¶ 2].  Burke's job duties included ordering food for the restaurant and managing employees.  [Burke Dep. 49-50, 57; Austin Dep. 57-58].  Austin's job duties included scheduling employees' shifts, managing the cafeteria, and managing employees.  [Austin Dep. 56-57; Burke Dep. 50, 57].

---

[1]  This fact statement is for the purpose of summary judgment only, and the facts contained herein have been drawn from the competent evidence presented in connection with the summary judgment filings.  In conformity with the instructions from the United States Supreme Court, I have construed the facts in the light most favorable to Plaintiffs, the non-moving parties, and I have drawn all inferences in Plaintiffs' favor.  See Bd. of Educ. v. Pico, 457 U.S. 853, 863 (1982); Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013).

[2]  In their opposition to IKEA's motion for summary judgment, Plaintiffs argue that Mr. Anastos's declaration is a "sham" affidavit because certain statements in his declaration contradict statements contained in his deposition testimony.  [Doc. 36 at 19-21].  After carefully reviewing the relevant deposition transcript pages and declaration paragraphs, I conclude that Mr. Anastos's declaration is not a "sham" affidavit; thus, I have considered the entirety of the declaration in making this report and recommendation.

In April 2014, Harold "Hal" Mash was hired as the Food Services Manager, and he directly supervised Austin and Burke, among other employees. [Deposition of Harold Mash ("Mash Dep.") 11-12; Anastos Dep. 21-22; Anastos Decl. ¶ 3; Austin Dep. 35, 57-58, 85; Burke Dep. 32-33, 50-51, 65-66]. On September 23, 2014, Austin received a corrective action and counseling from Mr. Mash for engaging in inappropriate behavior and making disrespectful comments towards a co-worker. [Austin Dep. 99-100, Ex. 15; Mash Dep. 28-32, Ex. 1]. In November 2014, Mr. Mash gave Austin her annual performance evaluation, in which he noted that Austin "angered coworkers with [her] brash and perceived rudeness" and that her "style and demeanor in interacting with coworkers must be improved." [Austin Dep. 105-06, 108-09, 113, Ex. 16; Mash Dep. 34-36, Ex. 4]. Because Austin received a rating of "2" on her performance evaluation, she was told that she would be placed on a performance improvement plan ("PIP"). [Austin Dep. 110].

On January 10, 2015, Austin made a complaint using iSpeak, a telephonic system available to IKEA employees to make work-related complaints.[3] [Austin Dep. 116-17, Ex. 17; Burke Dep. 70]. In her iSpeak complaint, Austin alleged the following: that Mr. Mash had referred to Austin as his "favorite"; that Austin had

_____

[3] In the Complaint, Plaintiffs refer to the telephonic system as "HR4U" rather than "iSpeak." [Doc. 1 ("Compl.")]. Plaintiffs both testified, however, that "HR4U" and "iSpeak" are the same system. [Austin Dep. 117; Burke Dep. 73-74].

not yet received her PIP; that Austin had requested training opportunities but was told that none were available; that Mr. Mash had called Austin his "work wife" twice; and that Mr. Mash had asked Austin about her husband.  [Austin Dep. 120-43, Ex. 17 at 2].  Austin stated that Mr. Mash had not made any advances toward her, but that he made her feel "uncomfortable."  [Austin Dep. 140, Ex. 17 at 2.]

Shortly after Austin made her iSpeak complaint, Samantha Alfred, another Team Lead in the Food Services Department, called Mr. Mash and Marcia Mott, the Human Resources ("HR") Manager, alleging that Austin was making false accusations of sexual harassment against Mr. Mash in an attempt to get him fired and to avoid the PIP.  [Video Deposition of Marcia Mott ("Mott Dep.") 8, 46-48; Mash Dep. 58-59; Anastos Dep. 52; Anastos Decl. ¶ 9].

On January 11, 2015, Austin met with Ms. Mott and informed her of Mr. Mash's "work wife" and "favorite" comments.  [Austin Dep. 144-49].  The following day, Austin met with Ms. Mott, Mr. Mash, and another manager to discuss her iSpeak complaint, and Austin was asked to prepare a written statement.  [Austin Dep. 149-54, Ex. 18].  In her statement, Austin noted that Bunistie Shockley, another Team Lead in the Food Services Department, had been with Austin when Mr. Mash called Austin his "work wife."  [Austin Dep. Ex. 18 at 1].  Austin also noted that Mr. Mash had once asked Ms. Shockley "to sit on his lap[.]"

4

[Id.].  In her own separate written statement, Ms. Shockley stated that she had never seen Mr. Mash engage in any sexually harassing behavior toward herself or toward Austin.  [Austin Dep. 166-68, Ex. 20 at 3; Burke Dep. 74-75, Ex. 12 at 3].

In a written statement dated January 12, 2015, Mr. Mash stated that Austin's sexual harassment allegations against him were "baseless accusations[,]" and that it was "unacceptable to sling false accusations . . . in order to exact revenge for disagreeing with a Performance Evaluation."  [Mash Dep. 57-60, Ex. 11].  During his deposition, Mr. Mash testified that he did, in fact, call Austin his "work wife" one time at a work function.[4]  [Mash Dep. 54-55].

Wendy Lester from IKEA's Co-Worker Relations Department took over the investigation and conducted numerous in-person and telephonic interviews.  [Mott Dep. 21-22; Anastos Dep. 24; Anastos Decl. ¶ 14].  Ms. Lester conducted separate interviews with Austin and Burke on January 20, 2015 and January 29, 2015, and took verbatim notes of each interview; Ms. Lester also interviewed Mr. Mash and

---

[4]  On January 12, 2015, two days after Austin made her iSpeak complaint and two months after Mr. Mash told Austin she would be placed on a PIP, Mr. Mash delivered the PIP to Austin.  [Austin Dep. 178-81, Ex. 24; Mash Dep. 68, Ex. 13].  It is undisputed that the delay in the delivery of the PIP was due to the Food Services Department being short-staffed at that time.  [Austin Dep. 110-11, 172, Ex. 22 at 1].  Austin does not contend that her being placed on the PIP was retaliatory.  [Austin Dep. 120-21].

5

several other employees as part of her investigation.  [Austin Dep. 173-78, Ex. 23; Burke Dep. 78-85, 90-93, 136-37, Ex. 13].

Meanwhile, Jim Anastos, the Store Manager, learned about Austin's iSpeak complaint against Mr. Mash.  [Anastos Decl. ¶¶ 1, 11].  As the Store Manager, Mr. Anastos often played a role in any iSpeak complaint investigations involving management-level employees.  [Id. at ¶ 8].  On January 23, 2015, Austin met with Mr. Anastos and Mr. Mash regarding Austin's iSpeak complaint.  [Austin Dep. 108, 184-87; Burke Dep. 104, 107; Anastos Dep. 10-11; Anastos Decl. ¶ 13]. Austin testified that during this meeting, Mr. Anastos told Austin that he was disappointed in her, that she should have come to him if she had any concerns about Mr. Mash, and that she left scars on the store.  [Austin Dep. 185-87].

According to Mr. Anastos, IKEA was unable to substantiate any of the allegations made by Austin against Mr. Mash, and IKEA elected not to pursue disciplinary action against anyone involved.  [Anastos Decl. ¶ 15].

Approximately four months later, in late May 2015, several high-performing employees within the Food Services Department abruptly resigned or sought to transfer to other departments.  [Anastos Dep. 32-33; Anastos Decl. ¶ 16].  In his declaration, Mr. Anastos stated that he became concerned with the level of dissatisfaction among employees, and he interviewed several employees to get a

6

sense of the work atmosphere.  [Anastos Dep. 32-36; Anastos Decl. ¶¶ 17-20].

From these interviews, Mr. Anastos learned that employees were choosing to resign or transfer because of the "uncomfortable and disrespectful work environment" that Austin and Burke created that made the Food Services Department an unpleasant place to work.  [Anastos Dep. 32-36, 38-39; Anastos Decl. ¶¶ 18-19, 21].  Employees accused Austin of using excessive profanity when referring to co-workers and management,[5] scheduling work shifts in a retaliatory manner, and purposefully failing to order crucial food items for the restaurant. [Anastos Decl. ¶¶ 22-23].  Employees accused Burke of using excessive profanity when referring to co-workers and management.[6]  [Id. at ¶ 24].

On May 29, 2015, Mr. Anastos separately interviewed Austin and Burke regarding the allegations against them.  [Anastos Decl. ¶ 25; Austin Dep. 194-99; Burke Dep. 105-06].  Based on the number of complaints and the nature of the allegations, Mr. Anastos sent Austin and Burke home pending the remainder of the investigation.  [Anastos Decl. ¶ 25; Austin Dep. 199-200, Ex. 27; Burke Dep. 106-12, Ex. 15].  According to Mr. Anastos, after he completed his investigation, he

---

[5]  Employees reported that Austin referred to Mr. Mash as "bitch," "little bitch," "asshole," or "mother-fucking bitch."  [Anastos Decl. ¶ 23].

[6]  Employees reported that Burke referred to Mr. Mash as "son of a bitch," "that motherfucking bitch," or "bitch."  [Anastos Decl. ¶ 24].

concluded that Austin and Burke should be terminated due to their unprofessional behavior.  [Anastos Decl. ¶ 26].

On June 4, 2015, Mr. Anastos separately met with Austin and Burke and terminated their employment with IKEA.  [Anastos Dep. 20, 34-35, 39-40; Anastos Decl. ¶¶ 29-32, 35; Austin Dep. 203, 206, 210, Exs. 28, 29; Burke Dep. 113, 115-21, Exs. 16, 17; Mash Dep. 37-38].  He told them that the termination was based on their use of excessive and targeted profanity in a way that created a hostile work environment.  [Id.].

That same day, Austin made another iSpeak complaint, alleging that her termination was in retaliation for her previous iSpeak complaint against Mr. Mash. [Austin Dep. 213-14, Ex. 30; Anastos Decl. ¶ 36].  In response to Austin's second iSpeak complaint, IKEA conducted interviews with the employees in the Food Services Department, which ultimately substantiated Mr. Anastos's conclusion that Plaintiffs' excessive use of profanity and other issues contributed to a hostile work environment.  [Anastos Dep. 56, 58-59; Anastos Decl. ¶ 38].

On October 6, 2016, Austin and Burke initiated this two-count lawsuit against IKEA, each alleging a single Title VII retaliation claim.  [Compl. ¶¶ 40-59].  Austin contends that IKEA terminated her employment in retaliation for her making the January 10, 2015 iSpeak complaint.  [Compl. ¶¶ 43-44; Austin Dep.

218-19].  Burke contends that IKEA terminated his employment in retaliation for his participation in the internal investigation regarding Austin's January 10, 2015 iSpeak complaint.  [Compl. ¶¶ 53-54; Burke Dep. 125-26].  After the close of the discovery period, IKEA filed the instant motion for summary judgment.  The motion is now fully briefed and ripe for consideration.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Ezell v. Wynn, 802 F.3d 1217, 1222 (11th Cir. 2015).  The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 325 (1986); U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc).  "[T]he substantive law will identify which facts are material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If

the moving party fails to discharge this initial burden, the motion must be denied. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Catrett, 477 U.S. at 324 (citation omitted).  "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (citation omitted).  Mere conclusions and factual allegations unsupported by evidence are insufficient to survive a motion for summary judgment.  See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## B.    Legal Framework for Retaliation Claims

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]."  42 U.S.C. § 2000e-3(a); Marable v. Marion Military Inst., 595 F. App'x 921, 924 (11th Cir. 2014).

A plaintiff may establish a claim of retaliation by direct[7] or circumstantial evidence, and when he produces only circumstantial evidence, courts use the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Wilson, 376 F.3d at 1087. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity. See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).

If the plaintiff makes out a prima facie retaliation case, and the employer articulates a legitimate, non-retaliatory reason for the challenged employment action, the plaintiff must show, by a preponderance of the evidence, that the legitimate reasons offered by the employer for taking the adverse action were not its true reasons. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143

---

[7] Direct evidence is "evidence that reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Calhoun v. EPS Corp., 36 F. Supp. 3d 1344, 1354 (N.D. Ga. 2014). "[O]nly the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and internal quotation marks omitted). Plaintiffs do not argue that they have presented direct evidence of retaliatory intent with respect to either of their claims. Their retaliation claims therefore rest on circumstantial evidence.

(2000); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) (describing the burden-shifting framework for retaliation cases). "An employee cannot establish pretext by simply demonstrating facts that suggest retaliatory animus, but must specifically respond to each of the employer's explanations and rebut them." Marable, 595 F. App'x at 924 (citation omitted).

### III.   DISCUSSION

IKEA argues, among other things, that it is entitled to summary judgment because: (1) Plaintiffs have not made out a prima facie case of retaliation; and (2) Plaintiffs have not come forward with evidence to show that IKEA's stated reasons for terminating Plaintiffs were actually a pretext for retaliation. For the reasons that follow, I agree.

**A.   Prima Facie Case**

In Count One, Plaintiffs contend that IKEA subjected Austin to unlawful retaliation after she raised an internal complaint of sexual harassment on January 10, 2015.   [Compl. ¶¶ 40-49].   In Count Two, Plaintiffs contend that IKEA terminated Burke's employment in retaliation for his participation in the internal investigation that immediately followed Austin's sexual harassment complaint. [Id. ¶¶ 50-59].  In its motion, IKEA argues, among other things, that neither Austin nor Burke can establish the third prong of a prima facie case of retaliation because

they cannot show the existence of a causal link between any protected conduct and their termination.[8]   [Doc. 33 at 4-8, 14-16].   IKEA argues that any protected conduct that Plaintiffs may have engaged in is too temporally remote from their termination to be probative of any type of causal connection.  [Id. at 6-8, 14-16].

"The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."   Pennington, 261 F.3d at 1266 (citations and internal quotation marks omitted).  Causation may be inferred by close temporal proximity between the protected activity and the adverse employment action.  See Thomas, 506 F.3d at 1364.  "But mere temporal proximity, without more, must be 'very close.'"  Id. (citations omitted).  Here, Plaintiffs rely only on temporal proximity to show causation; they have no other evidence.  [Doc. 36 at 10-12, 13-14].  Courts have held that in such circumstances, where "there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."   Thomas, 506 F.3d at 1364 (citations omitted).  The Eleventh Circuit has concluded that a three-to-four month gap is insufficiently proximate to

---

[8]   IKEA also contends that Plaintiffs cannot show the first prong of the prima facie case, that they engaged in protected conduct.  In light of my conclusion that summary judgment should be granted for two independent reasons (no causal connection and no fact issue as to pretext), I have not reached this argument.

establish causation.  See id.; see also Schmidt v. City of Atlanta, 558 F. App'x 953, 955 (11th Cir. 2014).

In this case, the adverse employment action about which Austin complains occurred nearly five months after her protected conduct; she filed her iSpeak complaint on January 10, 2015, and was terminated on June 4, 2015.  [Compl. ¶¶ 24, 34; Austin Dep. 116-17, Ex. 17].  Similarly, Burke participated in the internal investigation regarding Austin's iSpeak complaint on January 20, 2015 and January 29, 2015, and was terminated more than four months later on June 4, 2015.  [Compl. ¶¶ 26, 35; Burke Dep. 78-85, 90-93, 136-37, Ex. 13].

In an attempt to avoid summary judgment, Plaintiffs argue that temporal proximity should be measured from the date the internal investigation ended (April 2015) rather than from the date Austin made the iSpeak complaint (January 10, 2015) and the dates Burke participated in the investigation (January 20, 2015 and January 29, 2015).  [Doc. 36 at 10-14].  This argument fails for two reasons.  First, although Plaintiffs state in their opposition brief that the internal investigation ended in April 2015, Plaintiffs have not provided any evidence to support that fact.  A party cannot create a fact issue by simply making statements in its brief.  Facts must be supported by competent evidence.  See Fed. R. Civ. P. 56(c); see also Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Second, the Eleventh

Circuit has explained that a causal connection is measured from the time of the **protected activity** until the adverse employment action.  See Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004); Wallace v. Ga. DOT, 212 F. App'x 799, 802 (11th Cir. 2006).

In the absence of any evidence of causation, other than that of temporal proximity, Plaintiffs have failed to create a fact issue as to whether their protected conduct and termination were causally related.  See Higdon, 393 F.3d at 1221 ("By itself, the three month period . . . does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").  As such, they have failed to make out a prima facie case of retaliation under Title VII.  See Williams v. Waste Mgmt., 411 F. App'x 226, 229-30 (11th Cir. 2011) (a two-month gap between plaintiff's protected conduct and his employer's failure to promote him was not close enough to establish a prima facie case of retaliation).  Accordingly, I recommend that IKEA's motion for summary judgment be granted as to all of Plaintiffs' claims.

## B.    Pretext

There is a second, independent basis for granting summary judgment in this case.  Even if Plaintiffs could satisfy their initial burden of establishing a prima facie case of retaliation (which, as discussed above, they cannot), IKEA's motion

should still be granted because Plaintiffs have failed to create a fact issue as to pretext.  Had Plaintiffs established a prima facie case of retaliation, the burden would shift to IKEA to articulate a legitimate, non-retaliatory reason for terminating Plaintiffs' employment.  An employer's burden to articulate such a reason is a burden of production, not of persuasion.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  This burden has been characterized as "exceedingly light."  See Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 247 (11th Cir. 2011) (citations omitted).

Here, IKEA states that its reason for terminating Plaintiffs' employment was Plaintiffs' use of excessive and targeted profanity around co-workers in a way that created a hostile work environment.  [Anastos Decl. ¶¶ 26-28, 30-32].  IKEA has provided undisputed evidence that Mr. Anastos learned that employees in the Food Services Department were choosing to resign or transfer to other departments because of the "uncomfortable and disrespectful work environment" that Plaintiffs created.  [Anastos Dep. 32-36, 38-39; Anastos Decl. ¶¶ 18-19, 21].  Employees accused Austin and Burke of using excessive profanity when referring to co-workers and management.  [Anastos Decl. ¶¶ 22-24].  Mr. Anastos stated in his declaration that Plaintiffs should be terminated based on this conduct, especially because they were management-level employees who were to be held to a high

standard for maintaining a positive, non-hostile work environment.  [Id. at ¶¶ 26-27].   Accordingly, IKEA has easily met its "exceedingly light burden" of articulating a legitimate, non-retaliatory reason for terminating Plaintiffs' employment.[9]  See Burgos-Stefanelli, 410 F. App'x at 247.

Under the McDonnell Douglas framework, the burden would then shift back to Plaintiffs to demonstrate that IKEA's articulated reasons are pretext for retaliation.  See Burgos-Stefanelli, 410 F. App'x at 247; see also Rose v. Wal-Mart Stores E., Inc., 631 F. App'x 796, 799 (11th Cir. 2015).  To survive a motion for summary judgment, Plaintiffs must produce "reasons sufficient to allow a reasonable factfinder to determine that [IKEA's] proffered legitimate reasons were not what actually motivated its conduct."  Rose, 631 F. App'x at 799 (citations omitted).  A reason, however, is not pretext for retaliation "unless it is shown both that the reason was false, and that retaliation was the real reason."  Burgos-Stefanelli, 410 F. App'x at 247 (citation omitted).  "A [plaintiff] cannot establish pretext by simply demonstrating facts that suggest retaliatory animus, but must specifically respond to each of the employer's explanations and rebut them."  Id.

---

[9]   In their opposition brief, Plaintiffs implicitly concede that IKEA has articulated a legitimate, non-retaliatory reason for terminating Plaintiffs' employment by stating that "Defendant's proffered legitimate reasoning pursuant to Plaintiffs' termination is pretext."  [Doc. 36 at 15].

(citations omitted).  Here, Plaintiffs have failed to show a material fact issue on pretext.

Plaintiffs argue that the following evidence supports an inference of retaliation in this case: (1) Plaintiffs were terminated for using profanity in the workplace while other employees who similarly used profanity were not terminated or otherwise disciplined; (2) Mr. Mash participated in the decision to terminate Plaintiffs' employment despite the fact that he held "animus" toward Austin; and (3) Mr. Anastos "expressed his anger at Austin" for making her January 10, 2015 iSpeak complaint against Mr. Mash.  [Doc. 36 at 15-18].  I will address each of these points in turn.

### 1.    Use of Profanity in the Workplace

Plaintiffs first attempt to establish pretext by arguing that "despite other co-workers and managers actively engaging in profanity within the workplace, only Plaintiffs were targeted and terminated as a result thereof."  [Doc. 36 at 16]. Plaintiffs cite to evidence that other co-workers and managers also used profanity in the workplace but were not similarly terminated or otherwise disciplined for such behavior.  [Doc. 36 at 15-17].  Plaintiffs have not, however, disputed the fact that Mr. Anastos—the person who decided to terminate Plaintiffs' employment— received numerous complaints from other employees about Plaintiffs' use of

excessive profanity when referring to co-workers and management and how this made the Food Services Department an unpleasant place to work.  [Anastos Decl. ¶¶ 17, 22-24].   As noted above, IKEA has come forward with evidence that Plaintiffs' co-workers made numerous complaints against them.  [Id.].  Plaintiffs do not dispute that these complaints about them were actually made to Mr. Anastos.   Rather, they contend that IKEA "fail[ed] to provide any evidence in support of the contentions that Plaintiffs engaged in the alleged misconduct." [Doc. 36 at 16].   This argument fails, however, because the ultimate burden of proving pretext falls on Plaintiffs, not IKEA.  See Rodriguez v. Sec'y, U.S. Dep't of Homeland Sec., 518 F. App'x 653, 655 (11th Cir. 2013).   Plaintiffs have not carried their burden because they have not shown that Mr. Anastos believed the complaints to be meritless.  The Eleventh Circuit has explained: "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265-66 (11th Cir. 2010). Here, the issue is not whether Plaintiffs used profanity in the workplace, but whether Mr. Anastos, the decisionmaker, believed that the complaints about Plaintiffs were true.  Plaintiffs have no evidence that Mr. Anastos was lying when he explained his reasoning for terminating Plaintiffs' employment.

Plaintiffs also contend that IKEA terminated them for using profanity in the workplace despite the existence of evidence that they did not do so. [Doc. 36 at 17-18]. Again, this argument misses the point. "Whether an employee actually engaged in the misconduct that was reported to the decision-maker is irrelevant to the issue of whether the decision maker believed that the employee had done wrong." Baker v. Russell Corp., 372 F. App'x 917, 920 (11th Cir. 2010). Here, Mr. Anastos stated in his declaration that he believed Plaintiffs were contributing to a hostile work environment based on the numerous complaints he received about them from other employees, and Plaintiffs have no evidence to contradict this statement. [Anastos Decl. ¶¶ 17, 22-24].

Because Plaintiffs have presented no evidence to dispute that Mr. Anastos believed that Plaintiffs were using excessive profanity in the workplace in a way that created a hostile work environment, Plaintiffs have not created a fact issue of pretext. See Rodriguez, 518 F. App'x at 655 (affirming district court's grant of summary judgment where plaintiff failed to carry his burden of establishing pretext); Baker, 372 F. App'x at 921 (same).

### 2.    Mr. Mash's Participation in the Termination Decision

Plaintiffs also contend that they have demonstrated pretext because Mr. Mash—the individual against whom Austin raised a sexual harassment

20

complaint—participated in the decision to terminate Plaintiffs' employment.  [Doc.

36 at 17].   In making this argument, Plaintiffs again make assertions in their

opposition brief without citation to record evidence.  Plaintiffs have provided no

evidence that Mr. Mash participated in the decision to terminate their employment.

Rather, the undisputed evidence is that Mr. Anastos was the final decisionmaker

with respect to the termination decision and that he made the decision alone.

[Anastos Dep. 34-36, 39-40; Anastos Decl. ¶¶ 26, 30; Mash Dep. 36-38].

Plaintiffs point out that Mr. Mash testified that he was asked whether he agreed

with the decision to terminate Plaintiffs' employment, but this is insufficient to

create a fact issue as to pretext.   [Mash Dep. 36-38].   "[T]he mere fact that a

management employee reviewed and evaluated the challenged decision and

supplied information (favorable or unfavorable) to the final decisionmaker does

not elevate that employee to decisionmaker status absent evidence that the

employee had authority to overrule the final decision."  Chambers v. Walt Disney

World Co., 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).  Plaintiffs have provided

no evidence that Mr. Mash had the authority to overrule Mr. Anastos's termination

decision.   Thus, because Mr. Anastos (and not Mr. Mash) was the final

decisionmaker, "[the] inquiry is limited to whether [Mr. Anastos] gave an honest

explanation" for the decision to terminate Plaintiffs' employment.  See Kragor v.

Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310-11 (11th Cir. 2012) (citations and internal quotation marks omitted).  As noted above, Plaintiffs have presented no evidence to dispute that Mr. Anastos honestly believed Plaintiffs were creating a hostile work environment based on the numerous complaints he received from the other employees, or that his decision to terminate Plaintiffs was for that reason.

Accordingly, because Plaintiffs have not shown that Mr. Mash participated in the decision to terminate their employment, Plaintiffs have failed to raise a fact issue of pretext on this basis as well.

### 3.    Mr. Anastos's Comments to Austin

Finally, Plaintiffs argue that they can show pretext because Mr. Anastos "expressed his anger at Austin" for filing her January 10, 2015 iSpeak complaint. [Doc. 36 at 17].  Specifically, Austin testified that during a meeting on January 23, 2015, Mr. Anastos told Austin that he was disappointed in her, that she should have come to him if she had any concerns about Mr. Mash, and that she left scars on the store.   [Austin Dep. 185-87].   Mr. Anastos's comments alone are not sufficient to create a fact issue as to pretext.  When an employer's remarks "are submitted as evidence of pretext, but are not direct evidence of discrimination because they are either too remote in time or too attenuated, they may provide circumstantial evidence that, when read in conjunction with the entire record, show

a decisionmakers' discriminatory attitude."[10] <u>Dorrego v. Pub. Health Tr. of Miami Dade Cty.</u>, 293 F. Supp. 2d 1274, 1284 (S.D. Fla. 2003) (citing <u>Ross v. Rhodes Furniture, Inc.</u>, 146 F.3d 1286, 1291-92 (11th Cir. 1998)).  "Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext . . . , it will usually not be sufficient absent some additional evidence supporting a finding of pretext." <u>Scott v. Suncoast Beverage Sales, Ltd.</u>, 295 F.3d 1223, 1229 (11th Cir. 2002) (citations omitted).  The Eleventh Circuit has explained that "stray remarks that are 'isolated and unrelated to the challenged employment decision' are insufficient in this respect."  <u>Aristyld v. City of Lauderhill</u>, 543 F. App'x 905, 908 (11th Cir. 2013) (citation omitted).

Here, the only evidence of pretext that Plaintiffs have are these remarks that occurred during a single conversation on a single day; there is nothing else.  Other than Mr. Anastos's one-time comments on January 23, 2015, Plaintiffs have provided no other evidence that Mr. Anastos made similar comments to anyone before he decided to terminate Plaintiffs more than four months later.  As such, even when viewed in the light most favorable to Plaintiffs, Mr. Anastos's one-time

---

[10]  These comments do not constitute direct evidence of retaliation because they were "isolated and unrelated to the challenged employment decision[.]" <u>Rojas v. Fla.</u>, 285 F.3d 1339, 1342-43 (11th Cir. 2002) (citation omitted); <u>see also</u> <u>Jones v. City of Coll. Park, GA</u>, 540 F. Supp. 2d 1300, 1316 (N.D. Ga. 2007).

comments four months before Plaintiffs' termination fall into the category of "stray remarks that are isolated and unrelated to the challenged employment decision." Aristyld, 543 F. App'x at 908 (citations and internal quotation marks omitted). With no other evidence of pretext, Mr. Anastos's comments, alone, are insufficient to create an issue of fact on pretext, and summary judgment is appropriate.  See, e.g., id. at 909 (concluding, in part, that the district court properly granted summary judgment because the employer's isolated comments did not rise to the level necessary to support a claim for retaliatory harassment); Rojas, 285 F.3d at 1342-43 (supervisor's statement that another employee did not deserve her job because she was a woman was not sufficient to show pretext where the comment was isolated and unrelated to the decision to terminate plaintiff).

In sum, Plaintiffs have failed to come forward with any competent evidence to show that IKEA's decision to terminate Plaintiffs' employment was based on retaliatory animus related to Austin's January 10, 2015 iSpeak complaint or the investigation thereof.  See Rojas, 285 F.3d at 1344 (affirming district court's grant of summary judgment on plaintiff's retaliation claim where plaintiff failed to show that employer's proffered reasons for her termination were pretextual). Accordingly, Plaintiffs' Title VII retaliation claims fail as a matter of law, and summary judgment should be granted in favor of IKEA for this additional reason.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I **RECOMMEND** that IKEA's Motion for Summary Judgment [Doc. 33] be **GRANTED**.   I also **RECOMMEND** that IKEA's Motion for Summary Judgment based on judicial estoppel [Doc. 23] be **DENIED AS MOOT**.

**SO REPORTED AND RECOMMENDED**, this 6th day of July, 2018.

Catherine M. Salinas
United States Magistrate Judge